IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Jeffrey John Valenta )
    Plaintiff, )
 )
v. )
 ) Case No. _____
BI Incorporated, )
Pretrial/ Probation Service, )
Western District of Pennsylvania )
and it's agents; Eric Lawson, )
Chalene Scott, Tara (Supervisor-last name unknown) )
and Vern (last name unknown) )
    Defendants. )

## CIVIL COMPLAINT

### Preliminary Statement

1. Jeffrey John Valenta, Plaintiff pro se, sues BI Incorporated (henceforth identified as BI ) and The United States Pretrial/Probation Office for the Western District of Pennsylvania and it's Officers Eric Lawson, Chalene Scott, Tara last name unknown (Supervisor) and Vern last name unknown (henceforth known as "the Officers", for violations of his civil rights pursuant to **Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,** 403 U.S. 388, 91 S.Ct. 1999 (1971), and also for personal injuries sustained as a result of BI Incorporated's defectively manufactured GPS ankle monitor, model number unknown, pursuant to 28 U.S.C. §1367

### Parties

2. Plaintiff Jeffrey John Valenta is an individual citizen of the United States who was subjected to the wanton infliction of pain as a result of the Officers placement of a BI Incorporated GPS ankle monitor, model number unknown, around his ankle that caused him severe burns and nerve damage to his ankle.

3. Eric Lawson, Chalene Scott, Tara and Vern, the Officers, were at all times employees of the Western Pennsylvania Pretrial/Probation Office operating under the color of Federal Law who made equipment decisions, placed, replaced, and monitored or supervised Plaintiff using a GPS ankle monitor at some point and failed to remove and/or replace

the defective monitor upon Plaintiff's numerous complaints to defendants the Officers that it was malfunctioning to the point of causing pain. burning and permanent damage.

4. Defendant BI Incorporated is an independent corporation, incorporated under and pursuant to the laws of the State of Colorado with a principle place for the transaction of business at 6265 Gunbarrel Ave. Suite B Boulder Co. 80301 and is a manufacturer, distributor and servicer of electronic monitoring products including GPS ankle monitoring devices in particular the one affixed to the Plaintiff, model number unkown but affixed to Plaintiff's body at all times material to this complaint.

## Jurisdiction and Venue

5 The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1343 §1331, §1332 and/or §1367

6. The amount in controversy in this action exceeds $75.000 exclusive of any pre or post judgment interest or costs

7. Further, because Defendants, the Officers, while acting under the color of federal law, deprived Plaintiff of his civil rights, the Court has jurisdiction pursuant to Id.

**BIVENS**

8 Venue is proper in the Western District of Pennsylvania in that all events, errors omissions and/or deprivations occurred within the territorial boundries of this District.

## Exhaustion of Remedies

9. No remedies administrative or otherwise, were made available to Plaintiff to exhaust.

## General Averments

10 Following a criminal arraignment in the United States District Court for the Western District of Pennsylvania, in the matter of **United States v. Jeffrey John Valenta**, Case No 15-161 . Plaintiff was granted bail with mandatory conditions including electronic monitoring.

11. Sometime between August 10 2015 and September 14, 2017 Plaintiff was equipped

with a "spatial" position monitoring device placed upon his right ankle without complaint or malfunction.

12  Sometime prior to September 15, 2017  that device was replaced with a BI Incorporated GPS device  model unknown  at the behest of the Officers

13. On September 15  2017, Plaintiff suffered a serious fall from his home staircase when he went from his second floor living quarters to answer his front door located on the first floor upon the text command of Vern, one of the Officers, at which point the strap on the Plaintiffs GPS monitor became ensnared with the top step of the staircase causing him to lose his balance and fall.

14. As a direct result of the strap becoming ensnared with the home steps, Plaintiff fell over ten (10) feet down the stairs which caused him injury that was visable to Vern but was left unattended by Vern requiring the Plaintiff to drive himself to the Excela Hospital Emergency room for treatment of a then diagnosed closed head injury (concussion), rib contusions, leg and foot bruising, severe abdominal and extremity pain  loss of blood and/or loss of consciousness.

15. When the fall occurred, Plaintiff was the intended user of the GPS device and was using it in accordance with the manufacturers requirements.

16  Indeed  once the GPS is affixed to a person on pretrial release by a Pretrial Officer, the user is **not** able to adjust the device at all and knowing of or should be knowing of this restriction, Defendant BI Incorporated should have provided some mechanism to prevent slack in the ankle strap to prevent injuries from falls.

17  At some date after the fall but before June 25, 2018  at the direction of the Officers  the GPS ankle monitor was replaced with another BI GPS ankle monitor, model number unknown.

18  The replacement unit differed in design in that unlike the previously installed ankle monitor that had a detachable rechargeable battery pack  the replacement unit had a sealed  non-removable internal battery that could only be recharged while still

attached to the wearer and like a dog chained to a post in the yard the Plaintiff needed to be tethered to an electrical outlet via electrical cord for hours a day and while sleeping for recharging This added to the Plaintiff's anxiety embarassment and fear of electrical shock and further, Plaintiff was required at times by the Officers, to charge while in public causing him to suffer more fear, anxiety, humiliation, embarassment and ridicule from the public.

19  In the days preceding the removal of the BI GPS ankle monitor, which did occur at the end of Plaintiff's sentencing hearing on June 25, 2018 the Plaintiff reported to the Officers that the ankle monitor was causing him pain and discomfort from the heat it was generating while charging.

20  At times, the outside temperature of the GPS ankle monitor was measured and registered over 130 degrees Particularly during these times the GPS ankle monitor would send inaccurate alerts to the Officers causing the Officers to call, question and admonish the Plaintiff sometimes after midnight and before 6AM thus causing anxiety and stress to Plaintiff and other family members disturbed by the calls.

21  Indeed the ankle monitor malfunctioned throughout a violations hearing two weeks before removal of the GPS ankle monitor and again during the sentencing hearing of June 25 2018 which was noted in the court transcripts of those proceedings which also came to the attention and was acknowledged on the record by the Judge.

22. During the sentencing hearing of June 25, 2018 the Plaintiff complained to his counsel of his pain and discomfort and a Probation Officer was called to look at the GPS ankle monitor but did not do so until after the end of the hearing and just before removal of the Plaintiff from the court furthering the Plainitiff's pain, suffering and anxiety.

23. The discomfort and pain caused by the malfunctioning GPS ankle monitor caused the Plaintiff to be distracted during the sentencing hearing which compromised his constitutional right to fully participate in his sentencing proceeding.

24  When finally removed after the sentencing hearing of June 25, 2018. a red,

blistered and weeping silver dollar sized burn was revealed on the Plaintiff's right ankle where the GPS ankle monitor made contact with the skin.

25  After the sentencing hearing and upon removal of the GPS ankle monitor revealing the burn. the Officers failed in their duty to offer assistance to the Plaintiff or address the burn and the Plaintiff was placed in ankle shackles by the United States Marshal Service that further irritated the burn and Plaintiff suffered the hour and a half journey to the CCA Youngstown detention facility were the burn was finally treated and dressed.

26. Plaintiff to this day feels sensitivity on his right ankle causing him pain and discomfort while wearing hosiery and footwear

27  The Plaintiff, whose primary source of income is working as a professional wedding photographer, an activity that requires focus concentration and constant and uninterrupted movement for 12 hours or more at an event. will not be able to engage in his chosen profession at the same level of professionalism as he did before the injury since Plaintiff's profession does not allow him the discretion to take breaks when "he" needs them but only when the situation allows him and is not within his direct control.

Bivens Claim

28. Plaintiff restates paragraphs 1-28 as if set forth fully herein.

29. Pretrial/Probation Services and the Officers owed a duty of ordinary care to Plaintiff pursuant to 18 USC §3154 because Plaintiff was ordered to be supervised by Pretrial/Probation pursuant to a court order for the duration of his pretrial and presentence confinement.

30. The Pretrial/Probation Officer and the Officers failed to exercise ordinary care that a reasonably prudent person would exercise in the same or similar circumstances in that they would have adjusted or removed a GPS ankle monitor that was malfunctioning and causing pain, suffering and anxiety due to the malfunction.

31. But for the Pretrial/Probation and the Officers negligence in failing to adjust or

remove the malfunctioning GPS ankle monitor caused Plaintiff to suffer permanent injuries including but not limited to ankle pain and sensitivity phantom vibrations, anxiety, loss of economic opportunity to participate in his chosen profession causing financial harm and depression.

32. Plaintiff suffered actual damages in an amount exceeding ten million dollars ($10,000 000)

33. The United States is liable for the non-discretionary acts or omissions of it's employees the Pretrial/Probation Office and the Officers under Federal Tort Claims Act as codified at 28 USC §2671 et seq. (Lexis 2019)

### Strict Liability

34 Plaintiff contends that BI could have or should have reasonably foreseen the dangers inherent in their product

35. BI is engaged in the business of selling and manufacturing the GPS ankle monitor placed on the Plaintiff and as such, the product was expected to reach the Plaintiff without substantial change in the condition in which it was sold to Pretrial/Probation.

36 BI knew or should have known the danger to the end user of their product through application of reasonable developed human skill

37. The BI GPS ankle monitor was in a defective condition, unreasonably dangerous and caused harm and injury to the Plaintiff.

38. While unable to provide the exact nature of the manufacturing defect, it is not necessary to prove the precise nature of the defect under the "malfunction theory."

39 The BI GPS ankle monitor is both useful and desireable to the Pretrial/Probation Office because of its utility as a remote supervision and monitoring device

40 The BI GPS ankle monitors used on the Plaintiff, required a rechargeable battery which is known or should be known to BI (especially if it is a "lithium battery which are well known to be dangerous) that it could overheat and could cause explosion, fire or other serious injury as in the Plaintiff's case.

41. The BI GPS ankle monitor which caused the burn to the Plaintiff's ankle, needing to

be plugged into an electrical outlet while being worn by the end user for recharging purposes, is known or should be known by BI to place the wearer at risk for short circuit, shock or other injury.

42. BI manufactures and sells other products with the same or equivilent purpose, function and utility that do not require the wearer to be plugged into a wall outlet while wearing for charging but instead allows the user to remove the battery for recharging in a seperate and detached unit making it safer.

43. BI has proven that they can make an untethered device of similar function to the tethered device maintaining its character and quality without compromising cost and efficiency while still maintaining it's utility.

44 BI has proven their ability to eliminate the unsafe characteristic of the GPS ankle monitor without compromising it's utility since no meaningful utility is derived simply by encasing and internalizing the battery and making it non-removable.

45 The Plaintiff, as user of the end product, could not avoid the danger of the product even with proper exercise and care in the use of the product.

46 BI represented that the product, with proper care and use, was safe if used as directed which Plaintiff did by following instructions implicitly

47. BI did not provide suitable warnings to the Plaintiff regarding the electrical or other hazards associated with the product

48 By information and belief there were in fact no warnings visible to the Plaintiff on the product itself while wearing which should have been anticipated by BI as they are aware or should have been aware that the ultimate end user does not handle or apply the ankle monitor directly but it is applied by a third party, in this case a Pretrial/Probation Officer.

49 Arriving as a brand new product, just out of the box, the Plaintiff had good reason to believe that the GPS ankle moniotor was in good condition and suitable for the purposes it was designed, that it was tested and safe by information and belief if used

according to the instructions which Plaintiff followed explicitly.

50. BI failed to exercise ordinary care in their representations and ommissions of relevant safety factors inherent in their GPS ankle monitor.

51. BI failed to incorporate safety features such as emergency shut down, emergency light, signal or other preventive device by information and belief

52. By information and belief, as a vendor for a government agency, BI is required to carry liability insurance.

53. Plaintiff avers that BI's design of the GPS ankle monitor that caused the injury was a defective design and manufacture and further they were negligent in their failure to warn of potential hazards implicit in the use of electrical devices that are worn by the end user especially when directly connected to an electrical outlet

54. The BI GPS ankle monitor placed on the Plaintiff created a danger that was unknowable and unacceptable to him and would be to any reasonable consumer or user. A reasonable person would conclude that that the probability of fire, shock or other injury caused by plugging in the GPS ankle monitor to an electrical outlet would outweigh the burden or costs by BI in taking precautions against such hazards.

55. BI had a duty to conform to UL and industry standards of safety and useability and BI did not conform to those standards.

56 The design was defective in that BI knew or should have known, that by nature of the way the product is used, that it would require the user, sometimes out of necessity, to "plug in" while in full view of the public and further BI should have known that the design feature of this particular GPS ankle monitor, being an unnecessary design providing no enhanced or meaningful utility to the end user, would in fact cause stress, anxiety and embarrassment to the user who would appear to others as if a dog chained to a post or a person pillioried in the town square which in our Nation's history was used to shame and punish.

Damages

57. Defendant BI Incorporated, manufacturer, distributor and servicer of the GPS ankle

monitor purchased by The United States Pretrial/Probation Office for purposes of monitoring the Plaintiff, the ultimate end user of the product. the defendant is responsible for the harm and injury caused to Plaintiff despite its proper and intended use  Having followed all instructions and warnings where provided, the Plaintiff was burned by a defective and malfunctioning device. This injury was unforseen by the Plaintiff as he had an expectation of reliability derived from the sanctioning of such a device by no less a respected government agency Pretrial/Probation. whose credibility would not be questioned by the average person. As compensation for the injury caused by the BI GPS ankle monitor causing harm and suffering now in the present and the future  the Plaintiff asks for an amount to be determined by the court at trial but in excess of five million dollars ($5,000,000) given the apparent wealth of the defendants  This amount is necessary to ensure that the defendants take seriously its duty to protect the ultimate consumer  the Plaintiff end user, who, like the Plaintiff in this case, is not given a choice as to which product will be used on him or her, but instead must rely on the consumer's discretion. And since this is a causal relationship known to the defendants in the use of his product  the defendants must be sanctioned in a way that they realize their duty to the end user who must bear the burden and stigmatization that use of this product carries with it.

Prayer

58  WHEREFORE Plaintiff prays the Court enter judgment against defendants BI Incorporated and Pretrial/Probation and the Officers, and award compensatory damages at trial in an amount to be determined at trial but no less than five million dollars ($5 000,000); punitive damages in an amount to be determined at trial but no less than ten million dollars ($10.000,000); pre and post judgment interest as allowed by law; and any and all other relief that Plaintiff is entitled.

Plaintiffs Verification

59. I am the Plaintiff, proceeding Pro Se in the above captioned action for money damages and verify that the factual matter contained herein, unless stated to be asserted upon information and belief, is true and correct to my best efforts, knowledge and recollection under the pain and penalty of purjury.

Executed on this ___15___ day of June, 2020 by:

*[signature]*

Jeffrey John Valenta

Plaintiff Pro Se

#359-10-068

FCI Ft Dix

P.O. Box 2000

Joint Base MDL, NJ 08640